E. P. CALKIN AND SAMUEL JONES, TRADING UNDER THE FIRM AND STYLE OF E. P. CALKIN AND COMPANY, PLAINTIFFS IN ERROR, *v.* JAMES H. COCKE:

The State of Texas was admitted into the Union on the 29th of December, 1845, (9 Stat. at Large, 108,) and from that day the laws of the United States were extended over it.

Consequently, on the 30th of January, 1846, the revenue laws of Texas were not in force there, and goods seized for a non-compliance with those laws, were illegally seized.

THIS case was brought up by writ of error from the Supreme Court of Errors and Appeals for the State of Texas, under the 25th section of the Judiciary Act.

Calkin and Company were merchants of the county of Galveston, Texas, and Cocke was collector of Galveston under the Republic of Texas.

By a joint resolution of Congress, approved on the 1st of March, 1845, the President of the United States was authorized to submit one of two alternative propositions to the Republic of Texas, as an overture for her admission as a State into the Union. One of these contemplated the completion of this measure and the adjustment of its terms, by legislation, and the other by negotiation. The President selected the former, and presented to Texas the proposals contained in the first and second sections of the said resolutions. The first section declared " that Congress doth consent that the Territory of Texas may be erected into a State, to be called the State of Texas, with a republican form of government, to be adopted by the people of said Republic, by deputies in convention assembled, with the consent of the existing government, in order that the same may be admitted as one of the States of this Union."

And the second section declares that this consent, on the part of the United States, was given upon several conditions, one of which required the constitution, which was to be framed by the Convention, to be transmitted, with the proper evidences of its adoption by the people of the said Republic of Texas, to the President of the United States, to be laid before the Con-

gress of the Union for its final action, on or before the first day of January, one thousand eight hundred and forty-six. This consent, with the conditions on which it was given, was communicated to the Republic of Texas, and in the course of the following summer and autumn the people of Texas, by deputies in Convention assembled, with the consent of the then existing government, erected it into a new State, with a republican form of government, as shown by the constitution then adopted by them for its government, and declared and ordained that they accepted the proposal contained in the resolutions just spoken. of, and assented to the conditions on which it was made. The constitution adopted by the people of Texas, with the evidence of its adoption, and of their acceptance of the proposal made by Congress, and their assent to the conditions with which it was accompanied, was laid before Congress at the opening of the session of 1845–6, and on the 29th of December, 1845, the Congress of the United States, after taking cognizance of the acceptance of the proposal and of the conditions annexed to it by the people of Texas, and of the constitution adopted by them, declared that the State of Texas "shall be one, and is, hereby declared to be one, of the United States of America," &c.

This constitution of Texas, thus adopted by that State and laid before Congress, contained, amongst others, the following provisions. By the first section of the twelfth article of the said constitution, it was declared that "all process which' shall be issued in the name of the Republic of Texas, prior to the organization of the State government under this constitution, shall be as valid as if issued in the name of the State of Texas." In the second section of the same article it was provided, that "all criminal prosecutions or penal actions which shall have arisen prior to the organization of the State government under this constitution, in any of the courts of the Republic of Texas, shall be prosecuted to judgment and execution in the name of the State," &c. The sixth section contained a provision that if it should appear, on the second Monday of November, 1845, from the returns, that a majority of the votes polled of the people of Texas were given for the adoption of the constitution, the President should make proclamation of that fact, and thenceforth the constitution was ordained and established as the constitution of the State, to go into operation, and be of force and effect, from and after the organization of the State government under the said constitution. By section ten, it was declared "that the laws of this Republic relative to the duties of officers, both civil and military, of the same, shall remain in full force, and the duties of their several offices shall be performed in conformity with the existing laws, until the organization of the

government of the State under this constitution, or until the first day of the meeting of the legislature," &c.

On the same day that Congress declared that Texas shall be and is hereby declared to be one of the United States, viz. on the 29th of December, 1845, (9 Stat. at Large, 108,) Congress passed an act extending the laws of the United States over Texas, and declaring them to have full force and effect within the State. It provided also for the establishment of a court of the United States, with its necessary officers. And on the 31st of December, 1845, another law was passed, constituting Texas a collection district, and making Galveston a port of entry.

The Legislature of Texas did not meet, nor was the State government completely organized under its new constitution, until the 16th of February, 1846.

On the 30th of January, 1846, Calkin and Company imported into Galveston, from New Orleans, a large amount of merchandise, principally the growth and manufacture of the United States.

These goods were seized by Cocke, claiming one thousand dollars as duty, under the revenue laws of Texas. Calkin and Company protested against this, and demanded that the goods should be delivered to them in accordance with an act of Congress of the United States, of the 31st December, 1845, and of a circular of the Secretary of [the] Treasury of the United States, of 9th January, 1846, declaring that " vessels and their cargoes arriving in any port of the State of Texas, either from a foreign port, or a port in any other State or Territory of the United States, are to be placed on a similar footing with vessels and their cargoes arriving at ports in any of the States of the Union."

On the trial of the case in the District Court of the State of Texas, on the 5th of January, 1847, a judgment was rendered therein in favor of plaintiffs, restraining the defendant from claiming any duties on the merchandise, and condemning him to pay to the plaintiffs the sum of two hundred and fifty dollars, the damages assessed by the jury, as damages for the unlawful detention of the merchandise, and the costs of the suit. From this judgment a writ of error was prosecuted to the Supreme Court of Texas, and by that tribunal the judgment was reversed, and one given in favor of the defendant for the sum of nine hundred and sixteen dollars, the amount of duties unpaid, and the amount of costs expended in and about the suit.

A writ of error brought this judgment up to this court.

The case was argued, in printed arguments, by *Mr. Miles Taylor,* for the plaintiff in error, and *Mr. Harris,* for the defendant in error.

*Mr. Taylor*, after reciting the laws and other proceedings relative to annexation, continued:

Now it is an undoubted truth, that when a proposition, made by one party to another, is accepted as made, there is, from the instant of the acceptance, a valid contract, which from that moment is obligatory upon both, and must, to the full extent of its provisions, thereafter regulate the respective rights and obligations of the respective parties. Here the proposition was, that Texas should be admitted a member of the Union, on her compliance with certain terms and conditions. She complied with the terms and conditions, and accepted the proposition, and the Congress, in which the power to admit was vested, admitted her as a State into the Union, and on the 29th day of December, 1845, declared that she " is one of the United States." Was she not so ? I believe she was, and that whilst this necessarily results from the terms of the proposition to admit her into the Union, and of its acceptance, it is further shown by the action of Texas herself.

Texas regarded the contract for her admission into the Union as complete, when she had given her assent to the proposition submitted to her in relation to it, and had acceded to the specified conditions. This is at once evident from the fact that immediately after her assent was given, she called on the Executive of the United States to employ the military force of the nation to protect her from hostilities threatened by Mexico, I have not the public documents before me, so as to be able to refer to the precise date of this application. It was made, however, some time before the meeting of Congress, in the autumn of 1845, and was based upon the obligation imposed on the national government by the Constitution, of exercising its power to protect every member of the confederacy from invasion. That this construction given by Texas to the effect of her acceptance of the proposition submitted to her is correct, cannot be doubted. The contract was complete from the time of her acceptance. She was entitled, from that moment, to all the advantages growing out of it, and was subject to all the burdens resulting from it. It is true, there was a new state of things created, not contemplated by the existing laws, and that some action on the part of Congress was necessary to give effect to the new rights and obligations, and to extend the laws of the nation over Texas. That was the case with respect to the judiciary, the revenue system, the operations of the post-office, &c. But whilst something was necessary for these purposes on the part of the Congress of the United States, there was nothing which was required to be done by Texas. The Constitution of the United States, and the laws made in pursuance thereof, is

the supreme law of the land, and when Congress exercised the power delegated to it by the Constitution, on the 29th day of December, 1845, by act of Congress, and said that all the laws of the United States were thereby " declared to extend to and over, and to have full force and effect within the State of Texas, admitted at the present session of Congress into the confederacy and Union of the United States," the revenue and other laws were extended *proprio vigore;* and not because of any thing contained in the constitution of Texas, which had just been adopted, for " the Constitution of the United States, and the laws made in pursuance thereof," being the supreme law of the land, if any thing had been contained in the constitution of Texas, which conflicted with them, it would have been absolutely null and void, and have no more force or effect than if not written.

The pretensions set up by the defendant, in his pretended capacity of collector, under the authority of the revenue laws of the late Republic of Texas, are understood to be based on the 10th section of the twelfth article of the constitution of Texas, in which it is declared " that the laws of this Republic, relative to the duties of officers, both civil and military, of the same, shall remain in full force, and the duties of their several offices shall be performed in conformity with the existing laws, until the organization of the government of the State under this constitution, or until the first day of the meeting of the legislature."

An attentive consideration of this section, and of the other sections embraced in the same article of the constitution of Texas, will, I think, make it apparent that no such consequence as that now contended for, was contemplated, or could legitimately flow from it. The different sections contained in that article were designed to provide for the transition from an independent government to one adapted to the new order of things, and were not intended or designed to limit or restrain the rightful authority of the Constitution or laws of the United States, within the territory of Texas, or to fix a time when the independent authority of Texas should yield and give place to the national authority of the United States. By the first section of this article, it was declared, that " all process that should be issued in the name of the Republic of Texas, prior to the organization of the State government under the constitution, should be as valid as if issued in the name of the State of Texas." The second section provided, " that all criminal prosecutions or penal actions " which should have arisen prior to the organization of the State government under the constitution, in any of the courts of the Republic of Texas, should " be prosecuted to judgment and execution in the name of the State," &c.

Calkin and Company *v.* Cocke.

The sixth section directed, that "if it should appear on the second Monday of November, 1845, from the returns, that a majority of the votes polled of the people of Texas, were given for the adoption of the constitution, the President should make proclamation of that fact, and thenceforth the constitution was ordained and established as the constitution of the State, to go into operation and be of force and effect from and after the organization of the State government under the constitution. And then in the tenth section of the same article, is found the provision before recited, to the effect that the laws of the Repub- lic relative to the duties of officers, both civil and military, of the same, should remain in full force, and the duties of the seve- ral offices be performed "in conformity with the existing laws, until the organization of the government of the State," under the constitution, or "until the first day of the meeting of the legis- lature," &c.

These various provisions were introduced into the constitu- tion of Texas, not, as I before remarked, to bind or restrain the rightful authority of the Constitution and laws of the United States within the territory of Texas, or fix a time when the independent authorities of Texas should yield to and give place to the national authorities of the United States, but to obviate the inconveniences which might otherwise have grown out of the change from one constitution to another. In the absence of any declaration to the contrary, it cannot be presumed that any limitation or condition, on the contract just completed by their formal assent, was intended by these general expressions, because full effect can be given to them without adopting such a construction. But if it were otherwise, and it were the design of the people of Texas to impose such a limitation, the pro- vision would have produced no such effect. If Texas ever has been an integral part of the Union, she was so when Congress declared her to be so, on the 29th day of December, 1845, after her acceptance of the proposition submitted to her in relation to it. If she were so at that time for any purpose, she was so for all purposes; and then it would of necessity follow, that as the Constitution of the United States, and the laws adopted under its authority, are the supreme laws of the land, the con- stitution and laws of the Republic of Texas, wherever they conflicted with them, were at once abrogated, and that the people of Texas could not at any future time give validity or binding force to any new constitutional or legal provision which conflicted with it.

*Mr. Harris*, for the defendant in error.

It is obvious that the main question presented by the record

is, whether Texas was annexed to the United States, on the 26th of December, 1845, or on the 16th of February, 1846; and, as a consequence, at which of these periods the right of the late Republic to collect import duties terminated. It is contended by the plaintiffs, that this right ceased on the 29th of December, 1845, when the joint resolution of Congress was passed for the admission of Texas as one of the States of the Union; while it is contended, on the part of the defendant, that it did not cease until the 16th day of February, 1846, the day on which the State government was organized.

For the settlement of this question, resort must be mainly had to the terms of the joint resolution " for the annexation of Texas," &c., approved March 1, 1845; to those of the constitution of the State of Texas, and of the joint resolution of the 29th of December, mentioned above.

It is submitted that the first of these amounts to nothing more than a proposition, on the part of Congress, for the annexation of Texas, and this resolution may be said to be only preliminary to that object. The first and second sections, it is contended, clearly show that it was not the intention of Congress to concede to Texas the power to consummate annexation by any act of her own; for it provides that the constitution of the proposed State, " with the proper evidence of its adoption by the people of the said Republic of Texas, shall be transmitted to the President of the United States, to be laid before Congress, for its final action, on or before the first day of January, one thousand eight hundred and forty-six." This is entirely consistent with the preamble of the joint resolution " for the admission of the State of Texas into the Union."

The last section of the constitution of Texas, provides that " the ordinance passed by the convention on the fourth day of July, assenting to the overtures for the annexation of Texas to the United States, shall be attached to the constitution, and form a part of the same." They were transmitted to the President, to be laid before Congress together, and the meaning of the ordinance was restrained and limited, not only by the intention of the first joint resolution, but also by the spirit and terms of the constitution itself.

This constitution, containing the conditions upon which Texas consented to be annexed, and having been accepted by Congress, must, with all its terms and conditions, be regarded as a part of the contract, or treaty of annexation. It having been adopted by Congress, it is supposed that its provisions became a portion of the laws of the United States, and that the constitution of Texas, and the joint resolution of the 29th of December, 1845, should be taken and construed together.

20*

Under this view, attention is most respectfully invited to several articles of that instrument.

The first section of the 12th article of the constitution provides, that "all process which shall be issued in the name of the Republic of Texas, prior to the organization of the State government under this constitution, shall be as valid as if issued in the name of the State of Texas." In the second section, it is provided, "that all criminal prosecutions, or penal actions, which shall have arisen prior to the organization of the State government, under this constitution, in any of the courts of the Republic of Texas, shall be prosecuted to judgment and execution, in the name of the State," &c. The sixth section, under the same article, among other things, provides, that if the constitution be adopted by the people, it shall "go into operation, and be of force and effect, from and after the organization of the State government, under said constitution," &c.

By the 10th section it is declared, "that the laws of the Republic relative to the duties of officers, both civil and military, of the same, shall remain in full force, and the duties of their several offices shall be performed in conformity with the existing laws until the organization of the government of the State under this constitution, or until the first day of the meeting of the legislature."

It is most respectfully submitted, that these provisions furnish cumulative and convincing evidence, that the people of Texas (one of the contracting parties) intended and stipulated that the government of the Republic of Texas and all its laws should remain in full force until the 16th of February, 1846, "the first day of the meeting of the legislature." It is also submitted, that the other party, by accepting this constitution, became bound by all its terms and stipulations, as portions of the contract of annexation.

For the convenience of the argument, it may be supposed that Texas proposed to be annexed upon the terms and conditions contained in her State constitution, and that this proposition was accepted by the government of the United States. Had such been the case, it is easy to see that the effect of the contract would not be changed. If it had been so consummated, it is equally obvious that no diversity of opinion would have arisen in regard to its construction.

Then the condition, that the sovereignty and laws of the Republic should remain unimpaired until the 16th of February, 1846, was proposed by Texas and assented to by Congress.

It may be further remarked, that Congress must have understood this to be one of the stipulations of the contract. By reference to the act of Congress, of the 29th of May, 1846, (see

acts of 1845, '46, page 23,) it will be seen, that the 3d section provides that the Postmaster-General was not authorized to pay the expenses incurred for carrying the mail in Texas, prior to the 16th of February, 1846. When the contract of annex-ation was one and indivisible, was it the intention of Congress to receive its benefits from the 29th of December, 1845, and to postpone its burdens to the 16th of February, 1846?

Mr. Justice NELSON delivered the opinion of the court.

This is a writ of error to the Supreme Court of the State of Texas. The suit was originally brought by the plaintiffs in error before the District Court of Galveston county, to recover the possession of a stock of goods from the defendant, who had seized them at Galveston, as collector of that port, under the authority of the Republic of Texas, for non-payment of duties They recovered a judgment in that court; but, on a writ of error from the Supreme Court, the judgment was reversed, and the goods held liable to the duties.

The case was this: The plaintiffs shipped from New Orleans into Galveston the stock of goods, on the 30th January, 1846, and the defendant, claiming to act as collector under the Republic of Texas, and also that the revenue laws of that government were then in force, charged them with a rate of duty in conformity with those laws, and for the non-payment by the plaintiffs, they insisting that the goods were not liable to any rate of duty since the admission of Texas into the Union, he seized and took possession of, and detained them, until they were redelivered to the plaintiffs, by the order of the District Court.

The question in the case is, whether the revenue laws of this government were in force in the State of Texas at the date of the importation, or those of the former government of that country. The Supreme Court held the latter were in force, and charged the goods with the customary duties.

The State of Texas was admitted into the Union on the 29th December, 1845, on an equal footing with the original States, in all respects whatever. 9 Stat. at Large, p. 108. And by the 1st section of an act of Congress, passed the same day, all the laws of the United States were declared to be extended over, and to have full force and effect within, the State. And, by the 2d section, the State was declared to constitute one judicial district, called the District of Texas, for which a judge should be appointed, and should hold the first term of his court at Galveston, on the first Monday of February then next. The remaining part of the section confers upon the court the usual powers belonging to a district court, and also of a circuit court of the United States. The 3d section provides for the appoint-

ment of·a district attorney, and marshal for the district, and for a clerk of the court. Id. p. 1, 2.

On the 31st December, 1845, the next day after the admission ʻnto the Union, Congress passed an act declaring the State to be one collection district, and making the city of Galveston a port of entry, and to which was annexed several other places, as ports of delivery. The 2d section provides for the appointment of a collector for the port of Galveston, and the 3d section for the appointment of a surveyor for each port of delivery.

Now it is quite apparent, from the joint resolution of Congress, admitting the State of Texas into the Union, and the acts passed, organizing the Federal courts and revenue system over it, that the old system of government, so far as it conflicted with the federal authority, became abrogated immediately on her admission as a State. This is clearly so, unless some provision is found in the act of admission postponing the time when it shall take effect, and, as applied to the case before us, postponing it until after the 31st January, 1846, when these goods were shipped to the port of Galveston.

This has been attempted on the part of the defendant in error.

We have been referred to the 1st section of the 13th article of the constitution of Texas, which provides, "that all process which shall be issued in the name of the Republic of Texas, prior to the organization of the State government under this constitution, shall be as valid as if issued in the name of the State of Texas." And also to the 2d section of the same article, which provides that "all criminal prosecutions or penal actions, which shall have arisen prior to the organization of the State government under this constitution, in any of the courts of the Republic, shall be prosecuted to judgment and execution in the name of the State." And also, to the 6th section, which provides, upon its appearing that a majority of the votes of the people given is for the adoption of the constitution, "it shall be the duty of the President (of the Republic of Texas) to make proclamation of the fact, and thenceforth this constitution shall be ordained and established as the constitution of the State, to go into operation, and be of force and effect, from and after the organization of the State government." And also, to the 10th section, which declares, "that the laws of the Republic, relative to the duties of officers, both civil and military, of the same, shall remain in full force, and the duties of the several offices shall be performed in conformity with the existing laws, until the organization of the government of the State under this constitution, or until the first day of the meeting of the legislature."

It is supposed that these several provisions of the constitution of Texas, and which is the one accepted, when she was admitted into the Union by Congress, have the effect to postpone and fix the period of admission to the time of the first meeting of the legislature of the State and organization of the government under the constitution, which was on the 16th February, 1846 ; and, of course, to postpone the operation of the laws of the Union over her till that period.

But the obvious answer to this view is, that these several provisions in the constitution were designed and intended, and had the effect, to organize a government at once, on the adoption of the constitution by the people, and thereby to avoid an interregnum between the abrogation of the old and the erection of the new system, and until the legislative body could meet, and put the government in operation in conformity with the requirements of the organic law.

The whole of the 10th section, a part of which has been already referred to, affords an illustration of the design of the framers of the constitution.    It is as follows: " That no inconvenience may result from the change of government, it is declared, that the laws of the Republic, relative to the duties of officers, both civil, and military, of the same, shall remain in full force, and the duties of the several offices shall be performed in conformity with existing laws, until the organization of the government of the State under this constitution, or until the first day of the meeting of the legislature."    This section, taken in connection with the 3d section of the same article, completed an organization which effectually prevented any interval between the old and new systems, when the laws did not operate, or an organized government was not in force.    That section provides, that " all laws and parts of laws, now in force in the Republic of Texas, which are not repugnant to the Constitution of the United States, the joint resolutions for annexing Texas to the United States, or to the provisions of this constitution, shall remain in force, as the laws of this State, until they expire by their own limitation or repealed by the legislature.

This section, as it will be seen, also negatives the idea, that the Constitution and laws of the Union were not in force within the State as soon as her admission into the Union took place.

This subject was very fully considered in Benner et al. v. Porter, (9 How. 235,) which involved an inquiry into the affect of the admission of Florida into the Union as a State. . Some of the questions there were very similar to those raised in this case, as the machinery of the territorial government had been adopted by an ordinance in the constitution until the organization was effected under the constitution by the legislature.

We there said, "that, on the admission of Florida as a State into the Union, the organization of the government under the new constitution became complete; as every department became filled, at once, by the adoption of the territorial laws, and the appointment of the territorial functionaries for the time being." That "the convention being the fountain of all political power, from which flowed that embodied in the organic law, were, of course competent to prescribe the laws and appoint the officers under the constitution, by means whereof the government could be put into immediate operation, and thus avoid an interregnum that must have intervened, if left to an organization according to the provisions of that instrument. This was accomplished in a few lines, adopting the machinery of the territorial government for the time being, and until superseded by the agency and authority of the constitution itself."

An argument is attempted to be drawn against the conclusion that the laws of the Union were extended over Texas as soon as she was admitted into it, founded upon certain acts of Congress concerning the establishment and regulation of the post-office system over the State. On the 6th February, 1846, various post routes were established in Texas, and the Postmaster-General was authorized to contract for conveying the mail on them as soon as could be conveniently done, after the passage of the act. A joint resolution was also passed on the 20th May, 1846, authorizing the Postmaster-General to continue the mail service existing in the State under the laws and authority of Texas, or such part as, in his judgment, the public interest required, from the time that Texas became a State in the Union, and until contracts could be made, and the mail service put in operation on post routes established by Congress at its then session. And on the 29th of the same month, another act was passed establishing several post routes, and repealing the act of the 6th February, referred to. The second section of this act authorizes the Postmaster-General to continue in operation the existing mail service in Texas, established under its former laws, upon any of the routes mentioned, as he may deem expedient, not to extend, however, beyond the 30th June, 1850. And the third section provides for the payment of mail contractors in Texas for service performed by them since the 16th February, 1846, and also, the officers employed in superintending the mail service, with a proviso, that such payment shall in no case exceed the compensation agreed upon with the late authorities of Texas. The act then provides, that the several postmasters in Texas, appointed by the late government, shall account to the Postmaster-General for all balances accruing at their offices respectively, after the 16th February, 1846.

We perceive nothing in these several acts expressing or implying that Congress possessed no power to extend the system of mail service over the State from the time of its admission into the Union, or that the date of the admission is to be limited to the 16th February, 1846.

There was necessarily some delay in putting the system into practical operation; and to avoid any inconvenience in the mean time, the existing system under the laws of the former government was recognized and adopted, until the several post routes were designated by Congress, and contracts made for the performance of the service in the usual way. The period fixed when the payment of the old contractors and superintendents of the service should commence; and, also, when the existing postmasters should begin to account to the Postmaster-General for the money collected, and the allowance of compensation, to wit, the 16th February, 1846, relate simply to the arrangement as to compensation; and as to the adjustment of the accounts of these several officers. The system, as established under the Republic of Texas, was recognized, and not interfered with in the adjustment down to the period mentioned; after that it was placed under the laws and regulations of the Post-Office Department of the general government.

That these acts do not admit the want of powers in Congress to extend the post-office laws over Texas until the 16th of February, 1846, is shown by the act passed the 5th of that month, designating several post routes, and conferring the power upon the Postmaster-General to enter into contracts for conveying the mail over them. This act continued in force until repealed on the 29th of May following, when a new and somewhat different arrangement of mail routes was provided for.

Without pursuing the case farther, our opinion is, that the admission of Texas into the Union is to take date from the 29th of December, 1845, the time of its admission by Congress, and that the laws of the Union extended over it from that time; and, consequently, the seizure of the stock of goods in question by the defendant under the revenue laws of the Republic, on the 30th of January, 1846, was without authority of law.

The judgment of the Supreme Court below, must therefore be reversed with costs; and that the proceedings be remitted to that court with directions that the judgment of the District Court be affirmed with costs in Supreme Court and District Court.

## Order.

This cause came on to be heard on the transcript of the record from the Supreme Court of Errors and Appeals for the

State of Texas, and was argued by counsel. On consideration whereof, it is now here ordered and adjudged, by this court, that the judgment of the said Supreme Court of Errors and Appeals in this cause be, and the same is hereby, reversed, with costs, and that this cause be, and the same is hereby, remanded to the said Supreme Court of Errors and Appeals, with directions to affirm the judgment of the District Court for the county of Galveston in said cause, with costs in said Supreme and District Courts.